Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángela Alonzo Reyes<br><br>Peticionaria<br><br>v.<br><br>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio<br><br>Recurridos<br><br>Javier Díaz Marrero<br><br><br>Parte Interesada | Certiorari<br><br>2012 TSPR 100<br><br>185 DPR \_\_\_\_ |

Número del Caso: AC-2011-7

Fecha: 12 de junio de 2012

Tribunal de Apelaciones:

>    Región Judicial de San Juan

Abogado de la Parte Peticionario:

>    Lcdo. A. Meléndez Albizu

Abogada de la Parte Recurrida:

>    Lcda. Nereida Carrero

Materia: Ley de Seguro de Responsabilidad Obligatorio – Naturaleza privada de la Asociación de Suscripción Conjunta.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángela Alonzo Reyes

    Peticionaria

       v.

Asociación de Suscripción          AC-2011-7
Conjunta del Seguro de
Responsabilidad Obligatorio

    Recurridos

Javier Díaz Marrero

    Parte Interesada

    Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 12 de junio de 2012.

La única controversia que se presenta ante esta Curia es si la Asociación de Suscripción Conjunta, creada mediante la Ley Núm. 253-1995, *infra*, es un ente privado en el contexto de las Secs. 4.2 y 4.6 de la Ley de Procedimiento Administrativo Uniforme, *infra,* y por lo tanto sus decisiones no pueden ser objeto de un recurso de revisión ante el Tribunal de Apelaciones. Contestamos en la afirmativa.

**I**

Los hechos que dan base a la polémica que nos ocupa son sumamente sencillos. La Sra. Ángela

Alonzo Reyes (peticionaria) reclamó una cubierta ante el seguro compulsorio que administra la Asociación de Suscripción Conjunta (A.S.C.) del Seguro de Responsabilidad Obligatorio (S.R.O.), por un accidente de tránsito en el que se vio involucrada. Sin embargo, la A.S.C. negó su cubierta señalando -en primera instancia- que la peticionaria poseía "una cubierta de responsabilidad pública con una Compañía Tradicional". Ante la denegatoria de la A.S.C., la señora Alonzo Reyes solicitó la revaluación de su caso pero le fue denegada nuevamente. En esa ocasión la A.S.C. denegó su cubierta por el fundamento de que la peticionaria había sido la parte responsable del accidente en un cien por ciento. Ello, según surgía del informe amistoso del accidente de conformidad con la Regla LXXI (71) de la Oficina del Comisionado de Seguros de Puerto Rico.[1]

Inconforme con tal determinación, la peticionaria presentó un recurso de revisión ante el Tribunal de Apelaciones en el cual señaló que la determinación de la A.S.C. había sido arbitraria y caprichosa. Según la peticionaria, la A.S.C. se negó a aplicar la Regla LXXI de la Oficina del Comisionado de Seguros al no adjudicar la responsabilidad a base de la prueba y utilizar un diagrama que no se ajusta a lo que ocurrió el día del accidente. Por

---

[1] Reglamento del Sistema de Determinación Inicial de Responsabilidad del Seguro de Responsabilidad Obligatorio para Vehículos de Motor (Regla LXXI de la Oficina del Comisionado de Seguros). Véase Apéndice del recurso, pág. 19; Véase además, http://www.ocs.Gobierno.pr/ocspr/documents/asuntoslegales/Reglamentos/Regla%20LXXI.pdf (última visita el 26 de marzo de 2012).

su parte, la A.S.C. replicó con una solicitud de desestimación del recurso fundamentado en que, por ser una entidad privada, sus decisiones no pueden ser objeto de un recurso de revisión ante el Tribunal de Apelaciones; esto es, que el foro apelativo intermedio carecía de jurisdicción.

El 27 de octubre de 2010 el Tribunal de Apelaciones dictó sentencia y desestimó el recurso de la peticionaria por falta de jurisdicción. El foro apelativo intermedio fundamentó su determinación en lo argumentado por A.S.C. en el sentido de que esa entidad es un ente privado y por ende sus decisiones no pueden ser objeto de un recurso de revisión ante ese foro. En específico, el foro apelativo intermedio señaló en su sentencia que, "[e]n cuanto a la naturaleza de la A.S.C. el artículo 6 de la Ley 253, *supra*, explica que se trata de una '*asociación privada*'..." (Énfasis en el original). Además, añadió ese foro que "[s]egún surge de la Ley 253, *supra*, y conforme lo explica la exposición de motivos de la Ley 201 de 29 de diciembre de 2009, la A.S.C. opera como una empresa privada y no pública o cuasi pública".

Inconforme, el 20 de enero de 2011 la peticionaria presentó ante este Tribunal un recurso intitulado "Apelación" en el que señaló la comisión del error siguiente[2]:

---

[2] En su recurso la peticionaria planteó dos errores. No obstante, el segundo error versa sobre que el Tribunal de Apelaciones erró "al no determinar que su adjudicación concluyendo que la A.S.C. no es una "agencia" bajo la [L.P.A.U.] debe tener efecto prospectivo". Por

> Erró el [Tribunal de Apelaciones] al
> desestimar el recurso de revisión judicial por
> falta de jurisdicción, al concluir que la
> A.S.C. no es una "agencia" bajo la Ley de
> Procedimiento Administrativo Uniforme, cuando
> ejerce su función cuasi-judicial de adjudicar
> las responsabilidades de las partes envueltas
> en un accidente de tránsito para propósitos de
> conceder las cubiertas del Seguro de
> Responsabilidad Obligatorio que el Estado ha
> dispuesto que todo transeúnte [sic] viene
> obligado a pagar por ley.

El 20 de mayo de 2011 acogimos el recurso como un *Certiorari* y expedimos. Con el beneficio de la comparecencia de todas las partes, resolvemos.

## II

### A.    *Ley de Seguro de Responsabilidad Obligatorio*

Motivado por el problema asociado a la pérdida económica derivada de los daños no compensados que sufren los vehículos de motor en accidentes de tránsito en Puerto Rico, el Estado creó, mediante la Ley Núm. 253-1995,[3] un sistema de S.R.O.[4] Como todo seguro de responsabilidad pública, el creado mediante la Ley 253 tiene como propósito, no que la prima proporcione cubierta a los daños del asegurado, sino que responda por los daños que este pueda causar a un tercero.[5]

El S.R.O. creado mediante la Ley 253 provee una cubierta de hasta un máximo de $4,000.00 en daños por

---

considerar que ante la determinación del foro apelado de declararse sin jurisdicción, el argumento es totalmente inmeritorio, no lo consideramos en los méritos.

[3] 26 L.P.R.A. sec. 8051 *et seq., según enmendada.*

[4] Art. 2 de la Ley Núm. 253-1995, 26 L.P.R.A. sec. 8051.

[5] íd.

accidente, de acuerdo con los términos de la póliza para cada ciudadano.[6] Cada dos años la cubierta de esta póliza puede ser revisada, pero tal revisión dependerá de la estabilidad económica del ente que la administra –A.S.C.– y los estudios actuariales que se realicen. No obstante, de ninguna manera la misma podrá ser menor de $3,000.[7]

En la actualidad el costo del S.R.O. para el ciudadano es de $99 en caso de vehículos privados y de $148 para vehículos comerciales[8], los cuales se pagan al momento de la expedición o renovación de la  licencia (marbete) de los vehículos de motor.[9] Además, la ley establece una clara prohibición a que cualquier persona maneje, opere o conduzca su vehículo de motor –o permita que su vehículo de motor transite por las vías públicas– si previamente no ha adquirido el S.R.O.[10]

### B.     Asociación de Suscripción Conjunta

La Legislatura creó la A.S.C. para que implemente el S.R.O. en todas sus facetas. Esta asociación se compone de "aseguradores privados" –conforme los define la propia ley– a quienes la Ley 253 impone el deber de proveer cada cubierta del S.R.O.[11] Los aseguradores privados que se

---

[6] Art. 3, inciso (k), de la Ley Núm. 253-1995, 26 L.P.R.A. sec. 8052(k).

[7] Íd.

[8] Art. 7 de la Ley Núm. 253-1995, 26 L.P.R.A. sec. 8056(a).

[9] Art. 4, inciso (a), de la Ley Núm. 253-1995, 26 L.P.R.A. sec. 8053(a).

[10] Íd., inciso (b), 26 L.P.R.A. sec. 8053(b).

[11] Art. 5 de la Ley Núm. 253-1995, 26 L.P.R.A. sec. 8054(a).

ajustan a los parámetros de subscripción que la ley establece, pasan ineludiblemente a ser parte de la A.S.C.[12] De manera que, conforme al Art. 6 de la Ley 253,[13] la A.S.C. es una entidad compuesta por aseguradores privados autorizados a ejercer el negocio de seguros en Puerto Rico, cuya función es proveer y administrar el S.R.O.

Los aseguradores privados en Puerto Rico están obligados a proveer el S.R.O. que establece la Ley 253 de forma privada o como miembros de la A.S.C. De forma privada, implica que el asegurador tiene que ofrecer la cubierta para todo dueño de un vehículo de motor que la solicite, siempre y cuando no se den las circunstancias que permitan que la persona pueda ser rechazada.[14] Los criterios para rechazar por parte de un asegurador privado a un ciudadano que le solicita la cubierta del seguro de responsabilidad están claramente definidos por el Comisionado de Seguros a través de la Regla LXX, Reglamento 6254 de Seguro de Responsabilidad Obligatorio para Vehículos de Motor. La mayoría de estos criterios se fundamentan en que el récord del dueño o conductor principal del vehículo para el cual se solicita la prima

---

[12] O.C.S. v. A.S.C., res. el 10 de febrero de 2012, 2012 T.S.P.R. 28, 184 D.P.R. __.

[13] 26 L.P.R.A. sec. 8055.

[14] 26 L.P.R.A. 8054 (a) y (b). Véase además, Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1 (1er Cir. 2007).

refleja que ha sido un mal conductor o que constituye un alto riesgo.[15]

La segunda forma en que un asegurador privado está obligado a proveer la cubierta de S.R.O. es como miembro de la A.S.C. A través de la A.S.C. los aseguradores privados proveen la cubierta del S.R.O. a toda persona, incluyendo a aquellos que constituyen alto riesgo. Por lo tanto, si una persona que ha solicitado cubierta a través de un asegurador privado es rechazada, siempre tiene la opción de ser asegurado por la cubierta del S.R.O. que administra la A.S.C. El riesgo que constituye asegurar ese tipo de conductor de alto riesgo se distribuye entre todos los aseguradores privados que pertenecen la A.S.C.[16]

### C. Naturaleza de la A.S.C.

Como bien señala el foro apelativo intermedio en su sentencia, la naturaleza de la A.S.C. se encuentra reseñada en el Art. 6 de la Ley 253, *supra*, el cual establece que la A.S.C. es una **"asociación privada** que ofrecerá y administrará el seguro de responsabilidad obligatorio".[17] (Énfasis suplido). Ciertamente, el Art. 6, Íd, establece la naturaleza y propósito principal de la A.S.C., así como su composición, poderes, Junta de Directores, etc. No obstante, la manera en que el legislador **definió**

---

[15] Véase LXX, Art. 8.

[16] 26 L.P.R.A. 8055(e). Véase además, <u>Arroyo-Melecio v. P.R. Am. Ins. Co.</u>, 398 F.3d 56 (1er Cir. 2005); <u>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza</u>, *supra.*

[17] Art. 8, *supra.*

**expresamente** este ente en el contexto de la ley que lo habilita, se expresa prístinamente en el Art. 3(c) de la Ley, el cual establece lo siguiente:

> **§ 8052 Definiciones**
>
> Para fines de este capítulo, los siguientes términos y frases tendrán el significado que se expresa a continuación:
>
> (a)...
>
> (b)...
>
> (c) Asociación de Suscripción Conjunta.- Significa la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, **asociación privada** a cargo de ofrecer y administrar el seguro de responsabilidad obligatorio que se adquiere mediante el pago de los derechos de expedición o renovación de licencia de un vehículo de motor, creada por este capítulo.[18] (Énfasis suplido).

Así, la Ley 253, *supra*, define expresamente lo que es la A.S.C. y señala de manera pertinente a la controversia que nos ocupa, que esta es un ente privado. Originalmente ninguno de estos dos artículos -Arts. 3 y 6- incluía la expresión "asociación privada" en su texto. Fue bastante reciente, mediante la aprobación de la Ley Núm. 201 de 29 de diciembre de 2009, que se enmendaron ambos artículos para incluir esta expresión. Sobre la inclusión de este cambio en la ley, resulta interesante la razón por la cual el legislador efectuó tal variación en el texto. Así, surge de la exposición de motivos de la Ley 201-2009 lo siguiente:

---

[18] 26 L.P.R.A. sec. 8052(c).

> El 1ro de marzo de 2007, el Primer Circuito del Tribunal de Apelaciones de los Estados Unidos resolvió en el caso <u>Asociación de Suscripción Conjunta del Seguro Obligatorio v. Flores Galarza</u>, 479 F.3d63 (ter Cir. 2007) [484 F.3d 1 (1er Cir. 2007)] que las ASC opera como **una empresa privada y es una empresa privada, y no pública como se trató de argumentar;...Ante tal hecho jurídico, resulta imperativo enmendar las disposiciones de la Ley Núm. 253 que incidan sobre dicha determinación judicial.**[19] (Énfasis suplido)

No hay duda de que mediante esta enmienda, la legislatura decidió adoptar haciendo suya la interpretación sobre la naturaleza de la A.S.C. que expresara el Tribunal del Primer Circuito de Apelaciones en el caso de <u>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza</u>, 484 F.3d 1 (1er Cir. 2007).[20] Sin embargo, lo cierto es que el debate en torno a la aprobación de la Ley Núm. 253-1995, que se llevó a cabo en el Senado de Puerto Rico, cuerpo originador del proyecto de ley, confirma que en realidad esa siempre fue la intención del legislador. En el debate para la aprobación de la medida se fue enfático en señalar que la A.S.C. era y funcionaría a manera de una **empresa privada.** Así, el entonces senador Kenneth McClintock Hernández, como Presidente de la Comisión de Gobierno, al presentar la

---

[19] Exposición de Motivos, Ley 201 de 29 de diciembre de 2009.

[20] Para efectos de nuestro análisis, no es pertinente indagar la razón por la cual la Asamblea Legislativa expresó que era "imperativo enmendar las disposiciones de la Ley Núm. 253 que incidan sobre dicha determinación judicial", abrazando así tal interpretación de una figura que ellos mismos habían creado. Como sabemos, considerando los parámetros en que ese foro apelativo resolvió la controversia ante sí, pudieron, *a contrario sensu*, enmendar la Ley para establecer algo distinto a lo que había resuelto el Primer Circuito.

medida, dijo lo siguiente: "[el S.O.R. es] un sistema de seguro obligatorio **donde el gobierno meramente facilita el proceso, pero donde es la empresa privada quien en efecto asegura a los conductores**".[21] (Énfasis suplido). Nuevamente, al final del debate el Senador McClintcok Hernández intervino para señalar lo siguiente: "Hay que reiterar que el seguro compulsorio que estamos aprobando en día de hoy no es un seguro gubernamental. El gobierno es meramente el facilitador, el seguro va a ser privado".[22]

Por otro lado, una de las tareas principales que la Ley 253 le asigna a la A.S.C. es el mantener "un sistema de determinación inicial de responsabilidad que facilite y haga más expedito y uniforme el pago de reclamaciones" de los ciudadanos.[23] La autoridad para la consideración, revisión y final adopción de este sistema de determinación inicial de responsabilidad recae sobre el Comisionado de Seguros.[24] Así, y con el propósito de dar cumplimiento con el sistema de determinación inicial de responsabilidad creado por la Ley 253, *supra*, el Comisionado de Seguros promulgó la Regla LXXI, intitulada "Sistema de Determinación Inicial de Responsabilidad del Seguro de

---

[21] Diario de Sesiones, 6ta Sesión Ordinaria, Senado de Puerto Rico, Vol. XLVI, Núm. 10, pág. 22408.

[22] Íd. pág. 22431.

[23] Art. 8, inciso (a), de la Ley Núm. 253-1995, 26 L.P.R.A. sec. 8057(a).

[24] Íd., inciso (b), 26 L.P.R.A. sec. 8057(b).

AC-2011-7                                                          11

Responsabilidad Obligatorio para Vehículos de Motor".[25] El Art. 2 de esta Regla dispone que su propósito es adjudicar la responsabilidad de las partes involucradas en un accidente de tránsito fijando la proporción de responsabilidad que le corresponde a estas, de manera que las reclamaciones presentadas ante la A.S.C. sean resueltas de manera rápida y eficiente.[26] Por lo tanto, la Regla LXXI es la que establece la forma en que la A.S.C. ajustará y resolverá las reclamaciones del S.R.O., así como los elementos a tomar en cuenta y los mecanismos a utilizarse para realizar tales adjudicaciones.

Para delimitar la forma en que la A.S.C. adjudica la responsabilidad final en cada caso, la Regla LXXI incluye una serie de diagramas que reflejan diversas circunstancias de accidentes a los que se les asignó el por ciento de negligencia a adjudicarse a los reclamantes cuya circunstancias coincidan con el diagrama seleccionado.

### D. Proceso adjudicativo de la A.S.C.

Aunque al tomar una determinación la A.S.C. adjudica quién fue la persona responsable del accidente para efecto de la cubierta de la prima de S.R.O., sus decisiones no son de tipo adjudicativo. Esto es, en el proceso de determinar a cuál de las partes dará cubierta del seguro que administra, **esta entidad no celebra vistas evidenciarias,**

---

[25] Apéndice del recurso, pág. 19; Véase además, http://www.ocs.Gobierno.pr/ocspr/documents/asuntoslegales/Reglamentos/Regla%20LXXI.pdf (última visita el 26 de marzo de 2012).

[26] Íd.

**ni se crea un récord del proceso.** En ese contexto, la función que ejerce la A.S.C. a través del ajustador[27] que atiende el caso se limita a, de acuerdo a la información provista por las partes en el Informe Amistoso de Accidente, identificar el diagrama que aplica al accidente de tránsito en cuestión y determinar cuál parte fue la responsable.[28]

Ahora bien, es importante resaltar en primer lugar que en ese proceso el ajustador a cargo del caso **no puede considerar ninguna otra información que no sea la que las partes han provisto en el Informe Amistoso de Accidente.**[29] Además, **si ninguno de estos diagramas recoge los hechos del accidente de tránsito en controversia, no se puede utilizar el sistema de determinación inicial de responsabilidad que establece el Art. 8 de la Ley 253,** *supra*.[30] De manera que, como podemos ver, el proceso mediante el cual se determina la responsabilidad de un ciudadano a través del sistema de determinación inicial de la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, *supra*, es uno conspicuamente sencillo y limitado, en el que no se

---

[27] El Artículo 9.050 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 949f, en su parte pertinente define un ajustador de seguros como "la persona que, por compensación como contratista independiente o como empleado de un contratista independiente, o por honorarios, comisión o sueldo, investiga y negocia el ajuste de reclamaciones que surjan de contratos de seguros, exclusivamente a nombre del asegurador o del asegurado.

[28] Art. 7(a) de la Regla LXXI.

[29] Íd.

[30] Art. 7(c) de la Regla LXXI.

presenta prueba por ninguna de las partes con relación a quién es el responsable de los daños, ni existe un récord que pueda ser revisable en su día.

### E. El recurso de revisión administrativa

Un recurso de revisión administrativa es la solicitud de intervención judicial que hace una parte con relación a la decisión efectuada por una agencia administrativa. Tal intervención judicial contempla la consideración en primer lugar de "el cumplimiento de las reglas de revisión de las decisiones administrativas... [y, en segundo lugar,] la fase sustantiva vinculada con el ámbito de revisión definido por la Ley de Procedimiento Administrativo Uniforme".[31]

La Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada (L.P.A.U.)[32], establece la revisión administrativa como recurso apelativo disponible para cualquier parte que pretenda cuestionar una determinación de un organismo o agencia administrativa. En lo pertinente, la referida sección establece lo siguiente:

> Una parte adversamente afectada por una orden o **resolución final** de una **agencia** y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar un recurso de revisión **ante el Tribunal de**

---

[31] D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 2da ed., Bogotá, Ed. Forum, 2001, p. 517.

[32] 3 L.P.R.A. sec. 2101 *et seq.*

**Apelaciones**...[33] (Énfasis suplido).

De igual forma, la sección 4.6 de la L.P.A.U. señala que el foro apelativo intermedio "revisará como cuestión de derecho las decisiones, órdenes y resoluciones **finales de organismos o agencias administrativas**".[34] (Énfasis suplido). En este contexto, la L.P.A.U. define el término "agencia" de la forma siguiente:

> [C]ualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar [ ... ].[35]

Por otra parte, el Art. 4.006 de la Ley Núm. 201-2003, según enmendada, conocida como "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003",[36] establece que el Tribunal de Apelaciones "conocerá mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de **organismos o agencias administrativas**".[37] (Énfasis suplido). Además, dispone que "[e]l procedimiento a seguir

---

[33] 3 L.P.R.A. sec. 2172.

[34] 3 L.P.R.A. sec. 2176.

[35] 3 L.P.R.A. sec. 2102(a).

[36] 4 L.P.R.A. sec. 24 *et seq.*

[37] 4 L.P.R.A. sec. 24y(c).

será de acuerdo con lo establecido por las secs. 2101 et seq. del Título 3, conocidas como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico".[38]

Por último, las Reglas 56 a la 67 de la parte VII del Reglamento del Tribual de Apelaciones comprenden todo lo relacionado a las revisiones de decisiones administrativas. Específicamente, la Regla 56 señala que la revisión de decisiones administrativas  se refiere a "la revisión de las decisiones, reglamentos, órdenes, resoluciones y providencias finales dictadas por **organismos o agencias administrativas** o por sus funcionarios(as), ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley".[39] (Énfasis suplido).

En conclusión, es claro que únicamente los dictámenes pronunciados por una entidad que pueda catalogarse como pública, cuasi-pública o administrativa, pueden apelarse mediante un recurso de revisión administrativa ante el Tribunal de Apelaciones.

### III

En el caso de autos la peticionaria basa su alegato en que por ser la A.S.C. una entidad autorizada por ley a emitir una decisión o con facultades para adjudicar, tales características la definen como una agencia, **según lo dispuesto por el Art. 1 de la Ley de Procedimiento**

---

[38] Íd.

[39] 4 L.P.R.A. sec. 24y(c).

**Administrativo Uniforme.**[40] Esto, fundamentado en nuestras expresiones en <u>Ortiz v. Panel F.E.I.</u>, 155 D.P.R. 219 (2001). Específicamente, la peticionaria argumenta que "**el punto de partida** de si [la A.S.C.] es o no una 'agencia' es la propia definición de dicho término que aparece en la sección 1.3(a) de la [L.P.A.U.]".[41] (Énfasis suplido). Por otro lado, continúa diciendo que "[p]or sus propios términos, la definición de "Agencia" de esta sección 1.3(a) es sumamente amplia e incluye '**cualquier...entidad...u organismo...autorizado por ley**' para que '**pueda emitir una decisión**' o '**con facultades para... adjudicar**'".[42] (Énfasis en el original).

Primeramente, el problema con ese argumento es que obvia la realidad jurídica de que la Asamblea Legislativa es en primer orden la que, al crear una "agencia administrativa", define mediante su ley orgánica o habilitadora el papel y los contornos de su actividad.[43] **Por**

---

[40] 3 L.P.R.A. sec. 2102(a). Esta sección dispone lo siguiente:

A los efectos de este capítulo los siguientes términos o frases tendrán el significado que a continuación se expresa:

(a) Agencia.-Significa cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar, excepto:...

[41] Alegato de la parte peticionaria, pág. 10.

[42] Íd.

[43] D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 2da ed., Bogotá, Ed. Forum, 2001, p. 10.

**lo tanto, cuando se busca saber la naturaleza y definición de una entidad, la hermenéutica jurídica dicta acudir primeramente a la ley orgánica o habilitadora del ente u organismo en cuestión.**

En el caso de autos, en el Art. 6 de la Ley 253, *supra,* la Asamblea Legislativa no sólo se refirió a la A.S.C. como una "asociación privada", sino que expresamente la definió así en el Art. 3(c) de la misma ley. Ahora bien, ¿implica esto que una entidad a la cual su ley habilitadora define como "privada", no puede considerarse por ese hecho *per se* como una "agencia" para efectos de las disposiciones de la LPAU? No necesariamente. Una entidad privada creada por ley puede considerarse "agencia" en el contexto de la LPAU si así puede discernirse de la manera en que ejerce las funciones que le han sido delegadas, a pesar de la forma en que ha sido definida por  la Asamblea Legislativa. Ciertamente es menester entonces buscar en esa definición expresa –de existir– los elementos que contribuyan a fijar cuál ha sido la verdadera intención del legislador al crear la entidad en cuestión, en combinación con aquellas características que surgen de su ley habilitadora. En conclusión, la definición de la entidad que ha provisto expresamente el legislador tiene que formar parte necesaria del análisis, en conjunción con las funciones que le han sido autorizadas llevar a cabo, como previamente pautamos en <u>Ortiz v. FEI</u>, *supra*. De esa manera se puede tener un

cuadro completo de la intención legislativa, en la interpretación de una criatura de su hechura.

Como hemos visto, en el caso de la A.S.C. la Asamblea Legislativa no sólo enmendó su ley orgánica para establecer el carácter privado y no público o cuasi público de esta entidad, **sino que el proceso mediante el cual esa entidad adjudica la responsabilidad en los casos ante su consideración no se asemeja en lo más mínimo a una decisión de tipo adjudicativo en el que hay que establecer responsabilidad y daños**. El análisis es sencillo. En vista de que en cada accidente de tránsito que es atendido por la A.S.C. nos enfrentamos a un proceso en el que no se presenta evidencia testifical o de ningún otro tipo, ni se produce un récord, ¿basado en qué récord, que al menos contenga la argumentación bajo juramento de las partes y la evidencia en apoyo a tales argumentaciones, el Tribunal de Apelaciones podrá revisar tal determinación?

En segundo lugar, y como bien señaló el foro apelativo intermedio, en la propia Regla LXXI, específicamente en su Art. 9, el Comisionado de Seguros estableció que "[l]as adjudicaciones de responsabilidad hechas al amparo de esta Regla podrán ser revisables por las partes involucradas en un accidente de tránsito al igual que por los aseguradores **en el Tribunal de Primera Instancia** a los únicos efectos de dirimir una controversia en cuanto a la aplicabilidad del sistema o en cuanto a la selección de un diagrama para una

reclamación particular".[44] (Énfasis suplido). Es decir, el Art. 9 de la Regla LXXI expresa y claramente dispone que el Tribunal de Primera Instancia es el foro con jurisdicción para revisar las determinaciones de la A.S.C. cuando se impugna la aplicación del sistema o la utilización de un diagrama en particular, como ocurre en el caso de autos.

Como hemos visto, esa definición del ámbito jurisdiccional apelativo dispuesto por el Comisionado de Seguros en la Regla LXXI no choca en lo absoluto con la ley habilitadora que creó la A.S.C. y, por lo tanto, nos merece total deferencia. Así, en el caso de autos, la controversia gira en torno a una determinación de la A.S.C. fundamentada en los diagramas del sistema de determinación inicial. Por ende, la peticionaria debió presentar el recurso ante el Tribunal de Primera Instancia y no en el Tribunal de Apelaciones. El recurso debe ser una demanda ordinaria en contra de la A.S.C. y no un recurso de revisión, toda vez que no se trata de una agencia administrativa.

## IV

Por todo lo anterior, determinamos que la Asociación de Suscripción Conjunta que administra el seguro de responsabilidad obligatorio creado por la Ley Núm. 253-1995, *supra*, es un ente privado y no público, cuasi-público o administrativo, en el contexto de las secciones 4.2 y 4.6 de la Ley de Procedimiento Administrativo Uniforme, *supra*.

---

[44] Apéndice del recurso, pág. 29.

En consonancia, se confirma la sentencia del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ángela Alonzo Reyes

    Peticionaria

       v.

Asociación de Suscripción        AC-2011-7
Conjunta del Seguro de
Responsabilidad Obligatorio

    Recurridos

Javier Díaz Marrero

    Parte Interesada



SENTENCIA


San Juan, Puerto Rico, a 12 de junio de 2012.

     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la Sentencia del Tribunal de Apelaciones.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.


               Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo